**David M. LIDE, Jr., Appellant,**

v.

**Roy CAROTHERS, United States of America, Bank of Oak Grove, Charolais International and Bank of Dixie, Appellees.**

**No. 76–2065.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Jan. 30, 1978.

---

Ronald L. Griggs of Camp & Griggs, El Dorado, Ark., for appellant.

W. H. Dillahunty, U. S. Atty. and Gene O'Daniel, Asst. U. S. Atty., Little Rock, Ark., for appellees.

Before LAY, HEANEY and ROSS, Circuit Judges.

LAY, Circuit Judge.

David M. Lide, Jr., brought this action to foreclose a secret vendor's lien, allegedly created under Louisiana law, on cattle sold to Roy Carothers. He prayed that judgment be entered against Carothers in the sum of $38,800.00; that his lien be declared prior to that of other creditors of Carothers; that a receiver be appointed to take possession of the cattle; and that the cattle be sold in satisfaction of judgment if the judgment were not paid within a reasonable time. The Chancery Court of Chicot County, Arkansas, appointed a receiver and directed that the cattle be seized pursuant to a writ of attachment. Since the United

States held a secured interest in the cattle, the action was removed to the United States District Court for the Eastern District of Arkansas. A receiver was appointed to sell the cattle and the court ordered that the proceeds of the sale be deposited in the registry of the court. The United States, Charolais International, and the Bank of Oak Grove, Louisiana, defendants in the suit, also asserted claims against the proceeds of the sale of the cattle. Carothers denied that he was indebted to Lide and filed a counterclaim seeking damages against Lide for failure to perform and for wrongful attachment.

The district court found that Lide was indebted to Carothers in the net amount of $6,948.00 at the time the proceeding was commenced and entered judgment in that amount for Carothers on his counterclaim. The court also held that the attachment of the cattle was therefore wrongful and that defendants Carothers, the United States, and the Bank of Oak Grove suffered damages from the attachment in the sum of $5,930.00, representing the amount of the receiver's fees. The court entered judgment against Lide and his surety for that amount and ordered that the sum be paid into the registry of the court. The proceeds of the cattle sale were distributed to the Bank of Oak Grove, Louisiana, and to the United States, to be credited toward Carothers' obligations on notes in their favor.

*Background.*

The terms of the original verbal agreement and the performance of a subsequent written dissolution agreement were contested. After a bench trial, the court found that Lide and Carothers agreed that Lide would sell Carothers an undivided ½ interest in 84 head of Charolais cows (referred to herein as the joint venture herd) for $43,344.00. Lide also agreed to sell Carothers 34 head of Charolais cows of a lesser grade for $494.00 per head (referred to herein as the proprietary herd), only 32 of which were delivered, for a purchase price of $15,808.00. Carothers also agreed to pay $650.00 for a ½ interest in a Charolais bull. Upon delivery Carothers paid Lide $25,200.00, $4,500.00 of which was for the purchase of an additional 14 cows for the proprietary herd, which were never delivered.[1] In addition, the court found that Lide subsequently induced Carothers to execute notes in favor of Baker Bank and Trust Company and Charolais International.

Lide was indebted to Carothers, the court found, for fees to maintain the joint venture herd and for Carothers' delivery of 25 cattle. In addition, Lide admitted that Carothers was entitled to a credit of $7,000.00, due to a judgment obtained by Charolais International against Lide and Carothers for the balance due on the notes drawn in its favor.

Thus, the court concluded that Carothers owed Lide $34,602.00 on the purchase price under the original agreement. Set off against this amount was the amount Lide owed Carothers: $21,000.00 for maintenance, $12,350.00 for the 25 cows returned, $7,000.00 for the Charolais International judgment, and $1,200.00 as a credit for Lide's removal of cattle from the joint venture herd, amounting to $41,550.00. Judgment for Carothers was entered for the difference between the two sums, $6,948.00.

On appeal Lide challenges the trial court findings as to: (1) Abandonment of the dissolution agreement and Carothers' set-off for the 25 cattle returned pursuant thereto; (2) Carothers' set-off for unpaid maintenance fees; and (3) the wrongfulness of the attachment and the damages flowing therefrom. We hold that these findings are not clearly erroneous and affirm the judgment of the district court.

The trial court's findings of fact will not be set aside unless clearly erroneous, Fed.R.Civ.P. 52(a). When dependent

---

1. Although the court found that Lide did not perform the agreement to provide cattle of breeding age, with registration papers, and safely in calf to heavy springers, Carothers failed to show the difference between the value of the cows delivered and the purchase price, and therefore the court did not award him a set-off against the purchase price for Lide's failure to provide cattle which conformed to the agreement.

on oral testimony, by which the candor and credibility of the witnesses can best be judged, trial court findings are entitled to great weight. Moreover, we continue to give great weight to the trial judge's interpretation of local law in our review. *Carson v. National Bank of Commerce Trust & Savings*, 501 F.2d 1082, 1083 (8th Cir. 1974); *Drotzmanns, Inc. v. McGraw-Hill, Inc.*, 500 F.2d 830, 836 (8th Cir. 1974).

*The Dissolution Agreement.*

■ The trial court found that Carothers agreed to make an initial release to Lide of 25 head of cattle, which would represent Lide's share of the joint venture herd. In consideration therefor, Lide agreed to replace all of Carothers' Charolais cattle that originally came from him with commercial grade cattle. The court found that Carothers delivered 25 of the proprietary herd to Lide, but that the replacement cattle tendered by Lide did not conform to the agreement, and that the proposed settlement agreement was then abandoned by the parties. This finding is not clearly erroneous.

■ We find support in the parties' testimony for the court's finding that Carothers performed the initial release as promised. Carothers testified that the replacement cattle offered by Lide did not conform to the agreement and the trial judge evidently found him to be a credible witness. Under Arkansas law a contract may be rescinded by conduct which indicates an intent to abandon contractual rights. *Hicks v. Woodruff*, 238 Ark. 481, 382 S.W.2d 586 (1964); *see generally* Calamari and Perillo, The Law of Contracts § 21–2, at 760 (2d Ed. 1977). The finding of abandonment here is supported by the fact that several dissolution agreements were entered into at various times and abandoned and by the fact that Carothers conditioned the release of the 25 cattle on the promise that he could recover them if he and Lide did not agree on the other terms.

Because Carothers partially performed, he is entitled to fair compensation for the cattle delivered. *See Prince v. Thomas*, 15 Ark. 378, 381 (1854); *Calamari, supra* at 757–759.

*The Maintenance Agreement.*

■ Lide contends that Carothers failed to maintain the joint venture herd and is therefore not entitled to a maintenance fee, and that the court's finding on the amount of maintenance fees was excessive. The court did find that Carothers' maintenance was not adequate, and accordingly reduced the amount of maintenance fees due. We cannot say that the finding was clearly erroneous. The amount of the maintenance fees is supported by Carothers' testimony, which the trial judge apparently found to be credible.[2]

*Attachment of the Cattle.*

■ Lide argues that the attachment was proper because, since the maintenance agreement was not performed, Carothers was not entitled to maintenance fees and was therefore indebted to Lide for the price of the cattle at the commencement of the suit. Because we affirm the district court's holding that Carothers was not indebted to Lide at the time the writ of attachment was sued out, it follows that Carothers should have judgment against Lide and his surety in the attachment bond for the amount of damages sustained by reason of the attachment and the costs of the attachment. *See* Ark.Stat.Ann. § 31–152; *see also Malpas v. Lowenstine*, 46 Ark. 552, 553 (1885). The trial court also noted that Lide agreed to pay the costs of the receiver in his complaint.

The judgment of the district court is affirmed.

---

2. Lide also asserts as a point of error the trial court's use of a written joint venture agreement, offered into evidence by Lide, as evidence of the maintenance agreement. He does not give any reasons for this contention nor cite any authority. Since it was his exhibit, and the record does not reveal any attempt on his part to limit its use, no error appears.