Jerry STEELE *v.* Patrick MURPHY, Trustee
of Tim Murphy Trust

83-87                                  650 S.W.2d 573

Supreme Court of Arkansas
Opinion delivered May 16, 1983

*Bradley, Coleman & Boling,* by: *Jon R. Coleman,* for appellant.

*Reid, Burge & Prevalett,* by: *Robert L. Coleman,* for appellee.

ROBERT H. DUDLEY, Justice. This case of first impression involves the interpretation of Ark. Stat. Ann. § 50-531 (Supp. 1981), a law significant to the farming community. This law, enacted in 1981 by the General Assembly, provides as follows:

> Termination of oral lease of farm lands. — The owner of farm lands which are leased under an oral agreement may elect not to renew the oral rental or lease agreement for the following calendar year by giving written notice by certified registered mail to the renter or lessee,

on or before June 30, that the lease or rental agreement will not be renewed for the following calendar year.

Pursuant to this statute, the trial court held that the landlord, appellee, gave sufficient notice to the tenant, appellant, to terminate his tenancy in farm property at the end of 1981. The notice of termination was mailed by the appellee on June 29, 1981 by certified mail, but was not received by appellant, a tenant from year to year on a calendar year term, until July 3, 1981. We affirm. Jurisdiction is in this Court as this case requires the interpretation and construction of an act of the General Assembly. Rule 29 (1) (c).

Before considering whether the notice was timely, we must decide whether the act applies to tenancies from year to year. A comparison of the tenancy from year to year and the oral lease leads us to conclude that the General Assembly intended that this act be applied to tenancies from year to year.

At common law, one of the ways a tenancy from year to year could be distinguished from an oral one year lease was by the requirement of notice to vacate. A tenant holding under an oral one year lease was not entitled to notice of the landlord's decision not to extend the lease for another year. *Sigmon Forest Products, Inc.* v. *Scroggins*, 247 Ark. 493, 446 S.W.2d 198 (1969). However, a tenant from year to year was entitled to six months' notice to vacate. *Gregory* v. *Walker*, 239 Ark. 415, 389 S.W.2d 892 (1965). This distinction leads to three reasons which mandate that the act be applied to tenancies from year to year.

First, this Court has strictly construed the definition of six months' notice in such tenancies. Thus, notice on July 1 has been held insufficient to terminate a tenancy running to December 31. *Gregory*, 239 Ark. at 417, 389 S.W.2d at 893. Obviously by supplying the date of "on or before June 30" the General Assembly gave landlords and tenants a clear, simple and codified method of determining a fixed date for the purpose of giving six months' notice, at least as applied to calendar year tenancies from year to year.

Second, at common law in a tenancy from year to year the landlord alone is required to give notice to vacate. Similarly, the act does not provide for mutuality of notice but provides only for a method of notice by the landlord. This parallel circumstance indicates that the legislative intent was to provide for tenancies from year to year.

Third, oral notice, if timely given, has always been sufficient notice. However, disputes often arise over when oral notice was given. The act provides that the landlord may elect to use this form of written notice. Thus, the legislative intent could well have been to statutorily provide for an optional written method of proving when notice was given.

The appellant asks that we limit our construction of the act to its literal meaning. Clearly, the literal interpretation of the act is that it applies to "lands which are orally leased." One writer in an excellent article opined that the act "requires, in the case of oral agreements, the same notice not to renew or extend as was previously applicable to tenancies from year to year." Cathey, *The Real Estate Installment Sale Contract: Its Drafting, Use, Enforcement and Consequences,* 5 U. Ark. Little Rock L.J. 229, 237-38 (1982). The author of another fine article has written, "The Arkansas legislature has attempted to clarify the notice requirement for oral leases in Act 866 of 1981." Looney, *Legal and Economic Considerations in Drafting Arkansas Farm Leases,* 35 Ark. L. Rev. 395, 426 (1982). We decline to give such a limited interpretation to the statute because the literal interpretation does not give effect to the legislative intent. It is the duty of this Court to give effect to the intent of the General Assembly, even though the true intention, though obvious, has not been expressed by the language employed when given its literal meaning. *Berry* v. *Gordon,* 237 Ark. 547, 376 S.W.2d 279 (1964). We conclude that a proper construction of the act renders it applicable to tenancies from year to year.

The second issue is whether this notice was given in time to terminate the tenancy at the end of 1981. The notice was mailed on June 29 and received on July 3, 1981. At common law this would not have been timely notice for the

year ending in 1981 since the tenant was entitled to receive six months' notice. *See Gregory* v. *Walker, supra.* However, the act does not require that the tenant receive notice on or before June 30. It provides that the landlord give notice to the tenant on or before June 30. In using the word "give," as distinguished from "receive," the General Assembly may well have intended that we be guided by the definitions of these words in the Uniform Commercial Code. Ark. Stat. Ann. § 85-1-201 (26) (Supp. 1981) provides:

> A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course, whether or not such other actually comes to know of it. A person "receives" a notice or notification when
>
> (a) It comes to his attention; or
> (b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

These definitions comport with the definitions of the giving of notice contained in the legal encyclopedias. They agree that where the giving of notice by way of a specified form of mail is prescribed by statute, notice is effected when the written notice is properly addressed and placed in the mail. *See* 66 C.J.S. *Notice* § 18 (3) (1950); 58 Am. Jur. 2d *Notice* § 27 (1971).

Rule 5 (b) of the Arkansas Rules of Civil Procedure is also supportive of an interpretation that notice is effectively given when mailed. ARCP 5 (b) provides that when service is allowed to be made by mail, "Service by mail is presumptively complete upon mailing."

We conclude that the General Assembly did intend to change the common law to the extent that the giving of notice on or before June 30 is sufficient when service by mail of that notice is promptly completed. We recognize that a different issue would be before us if service had not been completed but we reserve judgment on that issue until it is

properly before us. *See, e.g., Escher* v. *Morrison,* 278 N.W.2d 9 (Iowa 1979).

Affirmed.