ROBERT J. GLADWIN, Judge
Stephanie Smith-McLeod and Gregory McLeod appeal a Columbia County Circuit Court order terminating their parental rights to their daughter, I.M. Stephanie challenges the trial court's findings on both statutory grounds and best interest.
*493 Gregory challenges only the statutory grounds for termination. We find no error and affirm.
I. Procedural Facts and History
Gregory McLeod and Stephanie Smith-McLeod are the parents of I.M. The McLeod family has a history of involvement with the Arkansas Department of Human Services (Department). The Department investigated two unsubstantiated allegations in July 2012 and July 2016. In September 2015, the Department investigated a hotline call alleging that Stephanie was living in the woods with I.M. and that they had no food. These allegations were found to be true. The family moved in with a relative and a protective-services case was opened.
On February 27, 2017, Stephanie was arrested on charges of kidnapping, endangering the welfare of a minor, possession of drug paraphernalia, and possession of a controlled substance. Gregory was arrested on charges of criminal mischief, resisting arrest, endangering the welfare of a minor, possession of drug paraphernalia, possession of marijuana, and driving on a suspended license.[1] Their arrests came after they had removed a relative's child from the hospital because they feared the child would be taken by the Department under "Garrett's law." In order to escape with the child, Stephanie punched a nurse in the face. Stephanie subsequently admitted being under the influence of methamphetamine and K2 at the time of her arrest. Because two-year-old I.M. was with them at the time of their arrest, I.M. was taken into custody on a seventy-two-hour hold. The Department subsequently learned that a relative had been caring for I.M. for over two months before Stephanie's arrest and that Stephanie had never cared for I.M. long term.
The Department filed a petition for emergency custody and dependency-neglect. Stephanie and Gregory stipulated to probable cause and eventually stipulated that I.M. was dependent-neglected on the basis of neglect, admitting that they had failed to appropriately supervise I.M., which resulted in I.M.'s being placed in an inappropriate circumstance that created a dangerous situation and placed her at a risk of harm. Further, they admitted that they were unable to assume the responsibility for I.M.'s care and custody due to their arrest and incarceration.[2] At the adjudication hearing, Gregory and Stephanie were incarcerated but ordered to avail themselves of any and all services germane to the case plan that were offered through the Arkansas Department of Correction.
At a subsequent review hearing, the court found that Stephanie and Gregory had not demonstrated progress toward the goals of reunification due to their incarceration. The court also found that they had been unable to complete and benefit from services under the case plan and had been unable to remedy the issues that prevented the safe return of I.M. to their care.[3]
*494 At a permanency-planning hearing held on March 2, 2018, the court noted that Stephanie had been incarcerated until February 21, 2018, and Gregory had been incarcerated for the duration of the case. The court then changed the goal of the case to termination of parental rights and adoption, finding that neither Stephanie nor Gregory had made any significant measurable progress toward achieving the goals established in the case plan, and neither had diligently worked toward reunification or placement of the child in the home.
Based on this change of goal, the Department filed a petition to terminate parental rights as to both Gregory and Stephanie on twelve-month-failure-to-remedy[4] and aggravated-circumstances[5] (i.e., little likelihood that services would result in reunification) grounds and alleged that termination was in I.M.'s best interest. The court conducted a termination hearing and granted the petition to terminate parental rights, finding that termination was in I.M.'s best interest and that the Department had proved both statutory grounds. Stephanie and Gregory both appeal the trial court's order terminating their parental rights.
II. Standard of Review
On appeal, we review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of Human Servs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the trial court's personal observations. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122.
Our case law recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. As a result, the Department bears a heavy burden in seeking to terminate the relationship of parent and child. Id. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997) ; Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).
III. Statutory Grounds
On appeal, Stephanie challenges both grounds found by the trial court to support termination. As to the twelve-month-failure-to-remedy ground, she argues that she was in complete compliance with the case plan, both while incarcerated and after her release, and that she had corrected the conditions that caused removal. As to the aggravated-circumstances ground, she argues that she had completed a substantial number of services in a short *495 period of time and, with the exception of individual counseling, was working diligently toward completing the requirements of the case plan; therefore, the court's finding that it was unlikely that services would result in a successful reunification was clearly erroneous.
Gregory argues that he did not have to show that he had remedied the grounds for removal; rather the Department had to prove that he had not. He claims that he was no longer incarcerated; that there was no evidence that he would kidnap his niece again; and that he had not taken any drugs since his arrest. As for the aggravated-circumstances ground, he argues that there was only evidence that he had been unable to work services while incarcerated, not that he was unwilling. In fact, he had done all that the Department had required since his release. He further argues that past drug usage does not equal little likelihood of successful reunification. Finally, he argues that the court was mistaken in its belief that a decision had to be made at the termination hearing.
We need not reach the merits of the arguments made by either Stephanie or Gregory due to invited error. Under the doctrine of invited error, a party may not complain on appeal of an erroneous action of a trial court if he or she induced or acquiesced in that action. J.I. Case Co. v. Seabaugh , 10 Ark. App. 186, 662 S.W.2d 193 (1983) ; see also Rogers v. Ritchie , 2017 Ark. App. 420, 528 S.W.3d 272 (holding that, pursuant to invited-error doctrine, Rogers was precluded from arguing that guardianship was void on appeal where she had requested the guardianship without obtaining the requisite professional evaluation and had argued its validity when trustees moved to set it aside); Clark v. Ark. Dep't of Human Servs. , 2016 Ark. App. 286, at 6, 493 S.W.3d 782, 788 (holding that, pursuant to invited-error doctrine, where Clark's attorney argued to trial court that "significant change of circumstances" was required to effectuate a change of custody that arose solely from dependency-neglect action, she could not then argue on appeal that the trial court had used the wrong standard from domestic-relations proceedings).
Here, both Stephanie's and Gregory's counsel conceded at the hearing that the trial court could terminate on the twelve-month-failure-to-remedy ground. In closing arguments, Stephanie's attorney stated:
We admit-in speaking for Stephanie McLeod-we admit that The Court can terminate the parental rights of Stephanie as to [I.M.]. We know you can do that, if for no other reason than the statute provides for twelve months out of the home. That's clearly been established, because my client's been incarcerated for little over, well, right at twelve months, but certainly since [I.M.] is still not in my client's home, more than twelve months.
On her behalf, counsel then proceeded to argue for more time and more services. Then, however, during the recitation of the trial court's oral findings, Stephanie's counsel stated:
I understand The Court's Ruling about the T.P.R., the twelve months. I can't really argue that. In fact, we didn't, but I would disagree with The Court and object to you making the Finding directing them to prepare an Order that aggravating circumstances have been met.
Counsel then argues that the court could "terminate the parental rights of these parents because of the twelve months' separation with finding aggravated circumstances. That's fine."
*496 Likewise, Gregory's counsel in closing stated:
The statute, we understand, you're limited in what you can do. The law is the law. You're [sic] got to follow that, but if there's-like [Stephanie's counsel] said-we're just pleading that if there's anything that The Court could possibly do to extend time to allow Greg and Stephanie to show The Court they are committed to this, if they fail, they fail.
In connection with the court's oral findings, Gregory's attorney responded, "Just for the record, I just kind of want to piggy-back on that which [Stephanie's counsel] just stated." Thus, counsel for Gregory also agreed that Gregory's rights could be terminated under the failure-to-remedy ground.
We hold that both parties affirmatively informed the court that there was sufficient evidence on which the court could terminate on the failure-to-remedy ground. They only disagreed on the aggravated-circumstances ground and requested more time to show compliance. When a party does not dispute the allegations of a ground at the trial level, they are prohibited from appealing the ground under the theory of invited error. Parnell v. Ark. Dep't of Human Servs. , 2018 Ark. App. 108, 538 S.W.3d 264 (holding that, pursuant to the invited-error doctrine, Parnell was precluded from arguing the elements of the failure-to-remedy ground on appeal when the elements were not disputed at trial).
Only one ground is necessary for termination to occur. Robinson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 262, 520 S.W.3d 322. Because the twelve-month-failure-to-remedy ground has been satisfied, we need not address Stephanie's or Gregory's aggravated-circumstances arguments.
IV. Best Interest
Stephanie also challenges the trial court's best-interest findings. She argues that she has been actively working toward reunification with I.M. and that there would be little harm in allowing additional time for reunification. Additionally, she argues that I.M. has a sibling, E.M.[6] Stephanie contends that although E.M. was also in the custody of the Department, the permanency-planning hearing for E.M. was set to occur approximately five months after the termination hearing and that her reunification with E.M. was likely. Given this likelihood, I.M. will be separated from E.M. when successful reunification with E.M. occurs. In essence, Stephanie argues that it is in I.M.'s best interest to allow her additional time for reunification.
Stephanie is correct that one factor the court must consider in determining the best interest of the child is whether the child will be separated from his or her siblings. Clark , supra. However, the effect of separation from a sibling is not the only factor the court must consider in determining whether termination is in the child's best interest. The trial court in this case fully considered the effect termination would have on I.M.'s relationship with her sibling. The court specifically stated that it did not "discount the fact that [I.M.] has a sibling in the foster care system" and that both were aware of the other.
Moreover, the intent of our termination statute is to provide permanency in a minor child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare, and where the evidence demonstrates *497 the return cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Miller v. Ark. Dep't of Human Servs. , 2017 Ark. App. 396, 525 S.W.3d 48. Here, the evidence revealed that Stephanie had a significant drug addiction. Stephanie admitted at the hearing that at the time of her arrest, she had been using methamphetamine daily and K2 four to five times a week. Stephanie's psychological evaluation recommended reunification only after an extended period of sobriety, gainful employment, and appropriate housing. Throughout the proceeding, Stephanie had been incarcerated for the majority of the time, which had hindered the provision of services. As a result, she had not completed all the recommended services. At the time of the hearing, Stephanie was unemployed and lacked transportation. She was receiving substance-abuse counseling, but due to her incarceration, her treatment was just beginning. Most importantly, Stephanie admitted that it was not appropriate for I.M. to be returned to her care at that time. On this record, the trial court's finding that termination of Stephanie's parental rights was in I.M.'s best interest was not clearly erroneous.
Affirmed.
Virden, J., agrees.
Whiteaker, J., concurs.

Gregory was also wanted on two failure-to-appear warrants.

We note persistent noncompliance with the statutory timeframes in this process. I.M. was removed on February 27, 2017, but the ex parte order for emergency custody was not filed until March 8, 2017. The probable-cause hearing was held on March 9, 2017, but the probable-cause order was not filed until June 15, 2017. At the probable-cause hearing, the court scheduled the adjudication hearing for May 5, 2017, which exceeds the statutory timeframes. The adjudication was eventually held on June 23, 2017, but the adjudication order was not filed until November 13, 2017.

We note again noncompliance with statutory timeframes. The review hearing was held on October 20, 2017, but the review order was not filed until December 13, 2017.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2017).

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3) .

E.M. was born on October 5, 2017, and was removed from Stephanie's custody at birth. E.M. is the subject of a separate dependency-neglect action.